IN THE UNITED STATES  DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LEONARDO JOHNSON, #256 042,   )
                                     )
       Plaintiff,              )
                                       )
     v.                        ) CIVIL ACTION NO.: 3:10-CV-50-WKW
                                     )          [WO]
DET. ROGERS,  *et al*.,        )
                                     )
       Defendants.         )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Leonardo Johnson, filed this *pro se* 42 U.S.C. § 1983 complaint on January 19, 2010. This action is proceeding against Michael Rogers and Stanley Garrett who are detectives with the Opelika Police Department located in Opelika, Alabama.[1] Plaintiff brings this action complaining that on July 7, 2009  Defendants subjected him to false arrest and excessive force  during the course of the arrest.  He requests full payment of his medical bills, dismissal of the charges against him, and $155,000.00 in damages.  (*Doc. Nos. 1, 5, 10.*)

In accordance with the orders of the court, Defendants filed an answer,  special report, and supporting evidentiary material in response to the allegations contained in the complaint, as amended.  The court then informed Plaintiff that Defendants' special report  may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the

---

[1]Plaintiff also named the Opelika Police Department and Officer Davis as defendants. The court dismissed Plaintiff's complaint against the Opelika Police Department under 28 U.S.C. § 1915(e)(2)(B)(i). (*Doc. No. 20.*)  Officer Davis was never properly served with the complaint and Defendants state that thy are not familiar with an "Officer Davis" and that no one by such name was present at the scene of the July 7, 2009 incident.  (*Doc. No. 24, Exhs. 2, 3.*)

proper manner in which to respond to a motion for summary judgment. Plaintiff took advantage of the opportunity granted to file a response to the special report filed by Defendants. This case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition to the motion, the court concludes that Defendants motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine . . . [dispute][2] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine . . . [dispute] as to any

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

material fact and that the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine dispute of material fact exists when the nonmoving party produces

---

[3]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

evidence that would allow a reasonable fact-finder to return a verdict in its favor.

*Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting her claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997)

(plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to her case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude

entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906

F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment on his claims against Defendants.

## II.  BACKGROUND

The following facts are largely undisputed and if disputed, fail to demonstrate a genuine issue of material fact. Defendant Rogers received a tip on July 7, 2009 of drug activity occurring behind an apartment complex in Opelika, Alabama. Defendant Rogers met Defendant Garrett and Officer Benjamin Jones at the apartment complex and the three officers walked to the rear of the building where they saw Plaintiff and two other persons. The officers explained that they had received a complaint about drug activity. As Officer Jones initiated a pat down of Plaintiff to search for weapons, Defendant Garrett informed the other officers at the scene that Plaintiff appeared to have crack cocaine in his hand. The Plaintiff then put his hand to his mouth. Officer Jones put his arm around Plaintiff's throat to prevent him from swallowing what the officers suspected were drugs. Officer Jones released Plaintiff after Plaintiff bit his arm at which time Defendant Rogers and Officer James Moody put their hand and/or arm around Plaintiff's throat to keep him from swallowing the suspected drug evidence and to force him to spit it out. (*See Doc. Nos. 1, 10, 24, 26*.)

Plaintiff complains that he was charged with resisting arrest "without a reason to be arrested" because no drugs were recovered from either him or the scene of the arrest. Plaintiff further complains that Defendant Rogers subjected him to an unnecessary use of force during the incident in question when he brutally choked him for no reason; he had nothing in his mouth, and he essentially cooperated with law enforcement officials. Accordingly, as framed by the parties, the dispute in this matter is whether Defendants Rogers and Garrett had probable cause to arrest Plaintiff for resisting arrest (the false arrest claim) and whether Defendant Rogers used excessive or unnecessary force during the arrest. (*Doc. Nos. 1, 10.*) The Defendants contend that they did not violate the Plaintiff's constitutional rights and that in any event they are protected from liability by qualified immunity.

### III. DISCUSSION

*A. Official Capacity Claims*

To the extent Plaintiff sues Defendants in their official capacities, he is entitled to no relief. A suit against a party in his or her official capacity is the same as a suit against the governmental entity that the individual employee represents. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Governmental entities may be liable when the alleged constitutional violations resulted from the execution of the policy or custom of the governmental entity. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978). Plaintiff has neither alleged nor come forward with any evidence that the governmental entity that

Defendants represent had a custom or policy which resulted in the wrongs asserted in the complaint. Thus, Defendants are entitled to summary judgment in their official capacities.

### B. Qualified Immunity

Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536, U.S. 730, 739 (2002) and *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (citation omitted) To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants were acting within the course and scope of their discretionary authority when the incident complained of occurred. Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show that these Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

In order to satisfy his burden, Plaintiff must show two things: (1) that Defendants committed a constitutional violation and (2) that the constitutional right Defendants violated

was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328,  1332 (11th Cir. 2004).

Courts now have discretion to determine the order in which  the two prongs of Plaintiff's

burden of proof are analyzed. *Pearson*, 129 S.Ct. at 818-19 (Courts "should be permitted to

exercise their sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case hand.").


## C. False Arrest

Defendant Garrett maintains that based on his experience and training as a police

officer in the Narcotics Division of the Opelika Police Department, he observed Plaintiff

holding what appeared to be crack cocaine in his left hand and when he alerted the other

officers of his suspicion Plaintiff put the substance in his mouth. When he did so, Officer

Jones put his arm around Plaintiff's throat to prevent him from swallowing what the officers

suspected to be  drugs.  Plaintiff bit Officer Jones' arm causing him to release his hold on

Plaintiff at which time Defendant Rogers and Officer James Moody put their hand and/or

arm around Plaintiff's throat to keep him from swallowing the suspected drugs.  The police

officers subsequently handcuffed Plaintiff, and Officer Jones then transported him  to jail.

 (*Doc. No. 24, Exhs. 1-4.*)

Defendants contend that the arrest did not violate Plaintiff's Fourth Amendment rights

because they had probable cause for the arrest which  constitutes a complete defense to a

false arrest claim.  *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009); *Von Stein v.*

*Brescher,* 904 F.2d 572, 584 n. 19 (11th Cir. 1990).  Probable cause to arrest exists if the facts and circumstances within the police officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense. *Ortega v. Christian,* 85 F.3d 1521, 1525 (11th Cir.1996).   A warrantless arrest in a public place may be made when the arresting officers have probable cause to believe that the suspect has committed, is committing, or is about to commit a crime.  *See Beck v. Ohio*, 379 U.S. 89, 91 (1964) (Probable cause exists if "at that moment the facts and circumstance within [the officers] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."); *see also Harper v. Harris County*, 21 F.3d 597, 601 (5th Cir. 1994).

The Defendants argue that even if they lacked actual probable cause to make the arrest, they would nevertheless be entitled to qualified immunity if there was "arguable probable cause" for Plaintiff's arrest. *See Davis v. Williams,* 451 F.3d 759, 762-63 (11th Cir. 2006) (stating that in the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had "arguable probable cause" to effectuate the arrest); *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) (same); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (law enforcement officials entitled to qualified immunity where they reasonably, but mistakenly, determine that probable cause exists); *Skop v. City of Atlanta*, 485 F.3d 1130, 1137-38 (11th Cir. 2007) (same). Defendants maintain that arguable probable

cause exists where an objectively reasonable officer in the same circumstances and possessing the same knowledge as the officer effectuating the arrest could have believed that probable cause existed. *Jones*, 174 F.3d at 1283; *see also Thornton v. City of Macon,* 132 F.3d 1395, 1399 (11th Cir. 1998). Additionally, under federal and state law, "the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Lee,* 284 F.3d at 1196. Where probable cause existed to arrest Plaintiff for any offense, his arrest and detention were valid even if probable cause was lacking as to some of the offenses with which he was charged or even as to all the announced charges. *Id.*

"Whether a particular set of facts gives rise to probable cause or aguable probable cause for arrest depends . . . on the elements of the crime. *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). Defendants placed Plaintiff under arrest for resisting arrest. Resisting arrest is a violation of Ala. Code § 13A-10-41 (1975), which defines the offense as: "[a] person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting [sic] a lawful arrest of himself or another person." Defendants argue that there was probable cause that Plaintiff committed this crime.

"Qualified immunity . . . protects officers who 'reasonably but mistakenly conclude that probable cause is present.' " *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009) (citations and quotation marks omitted). "Thus, the qualified immunity standard is broad enough to cover some mistaken judgment, and it shields from liability all but the plainly incompetent or those who knowingly violated the law." *Id*. (citations and quotation

marks omitted).  As explained, due to his narcotics training with the Opelika Police Department, Defendant Garret observed what appeared to him to be crack cocaine in Plaintiff's left hand. He told the other officers on the scene that Plaintiff had crack in his hand which he placed in his mouth reflecting a resistance to the police officer's efforts in investigating the report of drug activity and causing the officers to take physical action necessary to prevent him from swallowing the possible drug evidence.  (*Doc. No. 24, Exhs. 1-5.*)  Plaintiff argues that no drugs were recovered at the scene of the incident nor was he charged with any drug offense.  He states that he did cover his mouth with his mouth as the officers engaged in pat down procedures but claims he did so because he was yawning. (*Doc. Nos. 1, 10, 26.*)  Plaintiff offers no evidence, however, that Defendant Garrett did not believe he saw crack cocaine in Plaintiff's hand which he appeared to put in his mouth and believed him to be resisting the officers' efforts at preventing him from chewing or swallowing what was thought to be evidence of a crime.  Plaintiff has provided no evidence either that Defendant Garrett did not possess these beliefs, or that these beliefs were objectively unreasonable based on the totality of circumstances.  It has long been understood that a law enforcement officer has a duty to gather and preserve contemporaneous evidence of criminal activity occurring in his presence. *United States v. Kane,* 450 F.2d 77, 85 (5th Cir. 1971).  Thus, the officers' attempts to preserve what they believed was evidence of a crime were permissible, and the Plaintiff's resistance is a reasonable basis for the officers' arrest of him.  Under the circumstances, Defendants, at the very least, had arguable probable cause

to arrest Plaintiff, and Defendants are, therefore, due to be granted summary judgment on qualified immunity grounds with regard to Plaintiff's false arrest claim.[4]

### D. Excessive Force

Plaintiff complains that  Defendant Rogers subjected him to excessive force by brutally choking him after Defendant Garrett advised officers on the scene that Plaintiff appeared to have put drugs in his mouth. Plaintiff further complains that Defendant Rogers handcuffed him too tightly and that the cuffs became even tighter after Plaintiff was placed in the patrol car.  Plaintiff asserts that Detective Rogers told him he did not care whether the cuffs were tight.   Defendant Rogers denies that any of his actions amounted to an excessive us of force under the circumstances and asserts the defense of qualified immunity.  (*See Doc. Nos. 1, 10, 24, 26.*)

Plaintiff's allegation of excessive force during the course of an arrest is analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386 (1989); *Crenshaw v. Lister,* 556 F.3d 1283, 1290 (11th Cir. 2009); *Vinyard,* 311 F.3d at 1346-47; *Lee,* 284 F.3d at 1197.  A right is clearly established - and an officer cannot receive qualified immunity - if the "objectively reasonable police officer" would have

---

[4]The record in the instant proceeding reflects that Plaintiff was convicted of resisting arrest by the municipal court on January 6, 2012.  (*Doc. No. 24, Exh. 6.*)  To the extent Plaintiff seeks to challenge the validity of that conviction,  Defendants correctly point out that § 1983 may not be used to challenge the fact of a plaintiff's state court criminal conviction and/or sentence. *See Edwards v. Balisok,* 520 U.S. 641, 648 (1997)*; Heck v. Humphrey,* 512 U.S. 477, 483-89 (1994).  Rather, the proper vehicle for mounting such a challenge would be the filing of a petition under 28 U.S.C. § 2254.

realized that the conduct violated the constitution. *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006).

In balancing the necessity for the use of force against an arrestee's constitutional rights, the determination of whether excessive force was used during an arrest "requires careful attention to the facts and circumstances of each particular case," while keeping in mind that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97. With respect to determining whether the force applied was "reasonable" under the circumstances, the court examines: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; and (3) the extent of the injury inflicted upon the individual to whom the force was applied, *Vinyard,* 311 F.3d at 1347; *Lee* 284 F.3d at 1198, which usually requires an analysis of several factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Vinyard*, 311 F.3d at 1347; *Lee*, 284 F.3d at 1197. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396; *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003); *Nolin v. Isbell*, 207 F.3d 1253, 1258 n. 4 (11th Cir. 2000). The reasonableness of the force used "is judged from the perspective of a reasonable officer on

15

the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.   If the force applied was reasonable under the circumstances and not excessive, the police officer has not violated any clearly established constitutional right and is entitled to summary judgment based upon qualified immunity.  *Moore v. Gwinnett County,* 967 F.2d 1495, 1498 (11th Cir. 1992).   While reasonable measured uses of force may be applied to effect a suspect's arrest, "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008).

Defendant Rogers argues that he used no more force than necessary to prevent Plaintiff from swallowing what the officers believed to be drug evidence and from possibly putting his health in danger from ingesting crack cocaine. (*Doc. No. 24, Exh. 2.*)  As the court has already determined, Plaintiff has failed to demonstrate that Defendant Garrett's belief that Plaintiff was attempting to swallow crack cocaine was unreasonable under the circumstances.  Under the tense and rapidly evolving situation confronting Defendants,  the court finds that Defendant Rogers did not use excessive force when he put Plaintiff in a chokehold to prevent him from swallowing the drugs suspected to be in his mouth as it  does not violate any clearly established right for law enforcement officers, who  reasonably believe a suspect is attempting to swallow and/or destroy drug evidence, to use reasonable force  to prevent such occurrence, including holding the suspect's throat and/or attempting to pry open the suspect's mouth by placing pressure against his/her jaw and nose.  *See Williams v. Bramer,* 180 F.3d 699, 704 (5th  Cir. 1999) (with probable cause, an officer can

search a suspect's mouth for drugs); *United States v. Caldera,* 421 F.2d 152, 153 (9th Cir. 1970) (when officers observe a suspect attempting to swallow drugs, they may use reasonable force to prevent it);  *see also Espinoza v. United States,* 278 F.2d 802, 804 (5th Cir. 1960) (in a case in which federal officers who, without a warrant, obtained drug evidence from defendant's mouth as he was attempting to swallow and destroy the evidence "by grabbing the defendant about the throat," and "attempting to pry open his mouth by placing pressure against his jaw and nose," the court found defendant's objection that search and seizure occurred without a warrant and was an excessive use of force lacked merit).[5]

Taking Plaintiff's version of the facts as true, as must be done at the summary judgment stage, *Lee*, 284 F.3d 1190, Plaintiff has not shown that genuine issues of material fact remain regarding whether Defendant Rogers used excessive force.  Though Plaintiff claims that no drugs were found at the scene of the incident or on him, once the officers engaged him physically by putting grabbing his neck to prevent what they believed was an attempt to swallow or destroy drug evidence, the amount of force necessarily escalated. The police offers are not to be questioned in hindsight; rather, the proper evaluation is "whether a reasonable officer would believe that this level of force is necessary to the situation at hand."  *Lee*, 284 F.3d at 1197.

---

[5] See *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting all decisions of the former Fifth Circuit announced prior to October 1, 1981, as binding precedent in the Eleventh Circuit).

Plaintiff's exhibits include a copy an emergency room report from the East Alabama Medical Center in Opelika, Alabama, where he went after he was released from the detention center. The report, dated July 7, 2009 reflects that Plaintiff complained to hospital personnel that police officers placed him in a chokehold and hit him in his right rib cage.  He did not mention any injury or pain from being handcuffed.  Medical personnel diagnosed Plaintiff as having bruises to his neck and right rib. (*Doc. No. 26, Exh. 1*.)  While these injuries are consistent with Plaintiff's contention that he was grabbed him around his throat and that he experienced pain to his neck and rib area after his encounter with law enforcement officials, these injuries are *de minimis*.[6] "In the Eleventh Circuit, [courts] recognize that the typical arrest involves some force and injury." *Rodriguez v. Farrell,* 280 F.3d 1341, 1351 (11th Cir. 2002). For even minor offenses, police officers are authorized to use physical restraint, handcuffs, and to push suspects.  *See Nolin,* 207 F.3d at 1258 n. 4 (finding *de minimis* force when "minor bruising" along with minimal force); *Vinyard,* 311 F.3d at 1349 n. 13 (noting a strong argument that "minor bruising" is *de minimis* injury); *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir. 1993) (finding that subduing the suspect with a "choke hold" and pushing the suspect against a wall was *de minimis* force); *Gold v. City of Miami*, 121 F.3d 1442, 1446–47 (11th Cir. 1997)  (minor injury caused solely by tight handcuffs).

---

[6]Plaintiff states that he was examined by a nurse after being taken to the Lee County Detention Center. He does not  indicate whether, at that time, he requested and/or received any  treatment for his alleged injuries as a result of his arrest by Defendants on July 7, 2009. Rather, he merely indicates that medical personnel found no sign that he was under the influence of drugs. (*Doc. No. 24*.)

Based on the totality of circumstances, the court finds that Defendant Rogers' actions did not amount to excessive force and caused no more than what amounts to *de minimis* injury. *See Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir.  As noted, Plaintiff has provided no evidence that Defendants' beliefs that Plaintiff was attempting to swallow drug evidence was unreasonable, and thus, the amount of force Defendant Rogers  used to stop Plaintiff from doing so and to effectuate his arrest in resisting such efforts was "reasonably proportionate to the difficult, tense and uncertain situation that [he] faced," did not cause more than minor injuries, and therefore, did not amount to an  excessive or unnecessary use of force.  *Id*. at 1278.   Defendant Rogers is, therefore,  entitled to summary judgment on Plaintiff's excessive force claim.

### D.  Defendant Davis

The affidavits of Defendants' Rodgers and Garrett establish that no person by the name of Davis works at the Opelika Police Department.  In his response to the motion for summary judgment, the Plaintiff states, "I may have made a mistake in reading on of the officers (sic) name tag wrong as Officer Davis due to being disoriented after those officers assaulted me . . ." Under these circumstances, the Court concludes that the appropriate action is to dismiss this defendant without prejudice.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants Garrett's and Rogers' motion for summary judgment (*Doc. No. 24*) be GRANTED;

2.  Judgment be ENTERED in favor of Defendants Garrett and Rogers and against Plaintiff;

3.  Plaintiff's complaint against Defendant Davis be DISMISSED without prejudice;

4.  This matter be DISMISSED; and

5.  Costs be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that the parties may file any objections to the Recommendation on or before **July 25, 2012**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en*

*banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

Done this 11th day of July, 2012.


                         /s/Charles S. Coody
                       CHARLES S. COODY
                       UNITED STATES MAGISTRATE JUDGE